UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDRE DEGARZA, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-2984 |
| | § | |
| CITY OF HOUSTON, | § | |
| *Defendant.* | § | |

## OPINION ON SUMMARY JUDGMENT

In this Title VII suit, *pro se* plaintiff Andre DeGarza claims that the City of Houston discriminated against him based on national origin when he was not hired for several executive level positions. The City seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all claims. (Dkt. 33). As explained below, this motion is granted.

## I.    Background

DeGarza, a Hispanic male, filed his first lawsuit against the City of Houston on August 22, 2005, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964. Attached to the complaint was an EEOC charge (No. 330-2005-03976) claiming that the City had rejected his application for four executive level positions in favor of lesser qualified black applicants.[1] Shortly thereafter DeGarza filed a second complaint,

---

[1]    Also attached to this complaint was another EEOC charge (No. 330-2005-03989) and right to sue letter against the Houston Housing Authority alleging discriminatory failure to hire by that agency as well. The Houston Housing Authority, a public corporation created under chapter 392 of the Texas Local Government Code, is not a party to this action because it has neither been named as a defendant nor served with process.

docketed on September 1, 2005 as Civil Action No. 05-3161, reasserting the same Title VII claim with more factual detail and attachments including job postings, correspondence, and the relevant right to sue letter from the EEOC dated August 10, 2005.  The two cases were consolidated under the captioned case number by order of December 7, 2005.[2]

The gist of DeGarza's complaint is that in April 2005 he asked to be considered for four different executive level  City of Houston positions,[3] that he was qualified for each position, that he was not considered or even interviewed for these positions because an unlawful preference was given to Black applicants.  More particularly, he alleges that City human resources officials delayed the submission of his resume and application to appropriate hiring officials, and that the positions he sought were supposedly filled by "non-protected applicants."  He also asserts that a human resources official made a dismissive comment to him ("We are not going to have any problems with you"), which he interpreted as showing discriminatory bias.

The discovery period is now over, and the City has moved for summary judgment on all claims.  DeGarza failed to respond to the City's motion, nor has he sought an extension of time to do so.  The City has filed a copy of the certified mail receipt signed by DeGarza

---

[2]     (Dkt. 12).  The parties subsequently consented to have a magistrate judge conduct all further proceedings.  (Dkt. 17).

[3]     Deputy assistant director office of health policy (PN104140); assistant director housing & community development (PN103736); assistant director, housing & community development (PN103737); and deputy assistant director, department of finance & administration (PN100916).

2

showing that he personally received the City's motion for summary judgment on July 5, 2006. (Dkt. 38). Because DeGarza failed to respond, a hearing on the motion for summary judgment was set for August 14, 2006, the date previously set for jury trial. (Dkt. 36). DeGarza failed to appear at the hearing, in spite of notice duly sent to his address of record.

## II.   Analysis

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The City has moved for summary judgment on two grounds. First, it argues that DeGarza failed to exhaust his adminitsrative remedies in two respects: (a) his EEOC right to sue letter was issued less than 180 days after the charge was filed, the minimum statutory period for a meaningful investigation under 42 U.S.C. § 2000e-16(c); and (b) because the

3

defendant is a governmental entity, the right to sue letter must be issued by the Attorney General rather than the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(d). Whatever their merit, these arguments need not be considered here, because exhaustion of administrative remedies is not a jurisdictional prerequisite under Title VII.  *Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1218 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983). Moreover, the appropriate remedy in such a case is merely dismissal without prejudice to allow the plaintiff an opportunity to cure the defect.  *Id.*  As explained below, it would be useless to prolong the life of this baseless action any further.

The City rightfully contends that it is entitled to summary judgment on the merits. DeGarza has not submitted any evidence at all, either to support the allegations of the complaint, or to counter the City's legitimate non-discriminatory reasons for failing to hire him.  When the non-movant submits no summary judgment response, the trial court may accept as undisputed the facts in the motion for summary judgment.  *See Eversley v. Mbank Dallas,* 843 F.2d 172, 173-74 (5th Cir. 1988).  Given the posture of this case, there is no need to resort to the traditional *McDonnell Douglas* framework.  "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.  The district court has before it all the evidence it needs to decide whether the defendant has intentionally discriminated against the plaintiff."  *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983).

4

DeGarza's EEOC charge alleges that he applied for and was denied four specific executive posts with the City: Deputy Assistant Director, Office of Health Policy (PN104140); Assistant Director, Housing and Community Development (PN103736 and PN103737) (two positions); and Deputy Assistant Director, Department of Finance & Administration (PN100916). Because the EEOC charge determines the scope of a Title VII suit, judicial inquiry must be limited to these four hiring decisions. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed."); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970) (scope of judicial complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the EEOC charge).

The City has supplied uncontroverted evidence that its refusal to hire DeGarza was based on legitimate nondiscriminatory reasons. As demonstrated below, DeGarza was not the most qualified applicant for the positions in question; in at least one instance DeGarza did not meet even the minimal qualifications for the posted position. Moreover, two of the positions had already been filled before DeGarza inquired about them.[4]

1.   Deputy Assistant Director Office of Health Policy (PN104140)

The first position DeGarza applied for involved environmental planning, specifically related to air quality. Responsibilities included:

---

[4]   The factual discussion is based on the exhibits attached to the City's motion for summary judgment. (Dkt. 33). Those exhibits will be referred to as D. Ex. ___.

finding and articulating environmental issues appropriate for the City to address, developing programs, identifying stakeholders and interested parties, building consensus, locating and securing funding including grant funding, administering programs and grants, evaluating program effectiveness and relevance and making modifications and adjustments as necessary.

(D. Ex. 4). The minimum educational requirements for this position were "a Bachelor's Degree in Business Administration, Public Administration, Environmental Sciences, Public Health or a field related to the work to be done." *Id.* Preferences were to be extended to candidates with:

> work experience in environmental practice . . . previous experience in environmental program development, post-baccalaureate education and training in the environmental sciences, experience with governmental regulatory agencies. . . . In addition, knowledge of state and federal regulatory structures and requirements is strongly preferred.

*Id.* DeGarza's resume [5] reflects that he did not possess the minimum educational requirements for this job; his degrees were in fields unrelated to the environmental field. Nor does his resume show any work experience related to the environment or air quality. Based on his resume alone, DeGarza did not possess the minimum qualifications for this job, and for that reason the City's decision not to interview him for this position was entirely justified. By contrast, the candidate selected for this job was eminently well qualified. His resume [6] reflected two degrees related to environmental science, course work in process toward attaining a Ph.D. in atmospheric sciences, and work history that directly related to the

---

[5]     D. Ex. 2.

[6]     D. Ex. 6.

responsibilities and preferences listed for this position.  Nothing about this hiring decision remotely suggests unlawful discrimination.

2.      Assistant Director Housing & Community Development (PN103736)

The City's records do not indicate that DeGarza actually applied for this position.  He made an informal inquiry about this position on April 29, 2005 when he met the City's human resources officials.[7]  The position was already filled at the time of his inquiry, and DeGarza was so advised.[8]  This position emphasized community relations and outreach activities, including interactions with the public, media, and city council.[9]  The successful applicant was experienced in community involvement and well qualified; significantly, he was also Hispanic.[10]

3.      Assistant Director Housing & Community Development (PN103737)

Again, DeGarza never actually applied for this position, which involved the management of loan servicing, financial services, and grants.[11]  This position required seven years of administrative experience, including three years in managerial capacity, with a

---

[7]      It was on this occasion that the City's human resources official allegedly told DeGarza, "We are not going to have any problems with you."  Even if DeGarza had produced competent evidence that the remark was made (which he has not), the statement on its face is innocuous.

[8]      D. Ex. 12.

[9]      D. Ex. 5.

[10]     D. Ex. 10.

[11]     D. Ex. 5.

7

masters degree substituting for two years experience.   The successful candidate, who
possessed both an MBA and a law degree, fully satisfied all the listed job requirements.[12]

       4.      <u>Deputy Assistant Director, Department of Finance & Administration (PN
       100916)</u>

      DeGarza did apply and was interviewed for this position in the budget and evaluation
division.[13] Job duties involved preparation and management of the City's operating budget,
including supervision of analytical arm of the finance and administration department, as well
as monthly financial and performance reporting.  Minimum requirements for this position
included seven years of progressively more complex or responsible administrative
experience, with at least three years in a supervisory capacity.  Candidates with knowledge
of municipal budgeting, accounting, and reporting procedures and systems were preferred.

      DeGarza's resume, despite reflecting experience in finance, banking, and accounting,
does not list any experience related to municipal budgeting or administration. The successful
candidate was promoted from within the department, having served the City for more than
ten years as a division manager for budget and evaluation, a financial analyst, and auditor.[14]
His work experience closely matched the municipal budgeting, accounting and reporting
system experience desired for the job.  His resume also demonstrated an impressive rise in

---

[12]    D. Ex. 10.

[13]    D. Ex. 11.

[14]    D. Ex. 7.

relevant responsibilities since he began working for the City in 1994.   DeGarza's qualifications for this position were clearly surpassed by those of the selected candidate.

## III.   Conclusion

There is no basis on this record to draw any inference that DeGarza's national origin played any role whatever in the City's hiring decisions.   Two of the positions were already filled by the time DeGarza inquired about them; one of those spots was filled by a Hispanic. The other two positions for which he applied were awarded to highly accomplished individuals whose qualifications closely tracked the job requirements and preferences stated in the relevant postings.   By any objective measure, DeGarza's qualifications were inferior to the successful candidates; in one case (PN104140), DeGarza did not even meet the minimum stated qualifications.[15]   The City's legitimate articulated reasons for not hiring DeGarza stand unrebutted on this record.

No reasonable fact-finder could render a verdict in DeGarza's favor.   The City's motion for summary judgment is GRANTED.

Signed at Houston, Texas on August 25, 2006.

Stephen Wm. Smith
United States Magistrate Judge

---

[15]   This is not intended in any way to demean DeGarza's work experience or educational attainments, which are substantial.   Those qualifications simply did not fit the requirements of the jobs the City needed to fill.

9